IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA   ) | Cr. No. 23-00090 SOM | |
| ) | | |
| Plaintiff,   ) | | |
| ) | ORDER DENYING MOTION TO | |
| ) | ENSURE EXTRAJUDICIAL | |
| ) | STATEMENTS DO NOT PREJUDICE | |
| vs.   ) | THESE PROCEEDINGS | |
| ) | | |
| ROSS ANDREW BROWN,   ) | | |
| ) | | |
| Defendant.   ) | | |
| _____ ) | | |

**ORDER DENYING MOTION TO ENSURE EXTRAJUDICIAL
STATEMENTS DO NOT PREJUDICE THESE PROCEEDINGS**

**I.      INTRODUCTION.**

Defendant Ross Andrew Brown seeks an order compelling the Government to refrain from communicating with the media about:

> (1) the character, credibility, or reputation of a party;
> (2) the identity of a witness or expected testimony of a party or a witness;
> (3) the contents of any pretrial confession, admission, or statement given by a defendant or that person's refusal or failure to make a statement;
> (4) the identity or nature of physical evidence expected to be presented or the absence of such physical evidence;
> (5) the strengths or weaknesses of the case of either party; and
> (6) any other information the Government lawyer knows or reasonably should know is likely to be inadmissible as evidence and would create a substantial risk of prejudice if disclosed.

Brown also asks the court to compel the Government to correct, via an official press release, factual inaccuracies and

misrepresentations.  However, Brown does not identify what those are.

Brown's motion is denied because he has failed to show that such an order is necessary.  The media coverage of this case has not been by any means overwhelming.  The Government did issue a press release that merely summarized what was already in the public record.  On the present record, this court concludes that voir dire of prospective jurors with respect to pretrial publicity and each juror's ability to remain fair and impartial will adequately protect Brown's right to a fair trial.

**II.     BACKGROUND.**

On April 17, 2023, a Criminal Complaint was filed in this court charging Brown with having violated 18 U.S.C. § 2422(b) by attempting to use a facility or means of interstate or foreign commerce to knowingly persuade, induce, entice, or coerce an individual under 18 years of age to engage in any sexual activity for which a person could be charged with a criminal offense.  *See* ECF No. 1, PageID #s 2-3.  The Criminal Complaint is not sealed and is available for public viewing.

An affidavit by Robert S. Arcand, a Special Agent with the United States Army Criminal Investigative Division, was submitted in support of the Criminal Complaint.  The affidavit is viewable by the public.  The affidavit attests that, on April 12, 2023, Arcand posed as a 14-year-old girl named Izzy on Whisper, a

2

social media platform.  Arcand says that, under the username "Glacier_Cat," Izzy wrote, "Tired of stupid HS drama."  *Id.*, PageID # 3.  Brown, a United States Air Force Colonel, allegedly responded using the username "forever sun": "Is it dumb social stuff?"  *Id.*

Izzy responded, "Yeah, my friend got pregnant by an older guy and now all the girls in school are thinking she's a slut . . . like omg it's not that big of a deal."  *Id.*, PageID # 4.  Although Izzy's Whisper profile said she was 18-20, she disclosed to Brown that she was actually "almost 15."  *Id.*

According to Arcand, Brown then steered the conversation to sex between older men and younger females, telling Izzy that he had engaged in sexual acts with a 19-year-old after he had turned 40.  Brown allegedly asked Izzy whether she liked older guys, inquiring, "What's the oldest you've been with, and what have you done?"  *Id.*  Izzy told Brown, "I have done some stuff with my ex bf he was my age tho."  Brown allegedly responded, "Yeah I bet haha.  Did you play with your ex's dick? . . . Did you suck it?"  Izzy responded, "Yes I did" and then asked what Brown did for work.  He allegedly responded that he was "a lawyer, actually."  Then he asked, "Did you suck him a lot or just a time or two?"  *Id.*, PageID #s 4-5.

Brown and Izzy then allegedly exchanged what purported to be their photographs, and Brown told Izzy, "Lmao. Makes me

3

want to grab those thighs!" Brown allegedly discussed masturbation, asking Izzy whether she knew how to work her G-spot and telling her that he could teach her how to rub it. Brown allegedly told Izzy, "We can do it now if you want, or some other time. Up to you." Eventually, Izzy indicated that she was not ready to meet someone she had just started talking with that night. Brown then asked, "How soon?" *Id.*

The following day, April 13, 2023, Brown allegedly again asked Izzy about her sexual history, inquiring whether she was a virgin. Izzy responded that she and her ex had engaged in sexual intercourse five or six times. *Id.*, PageID # 6. Brown allegedly told Izzy that it was probably not good with a younger guy and said, "The youngest I've taught was 16." He also allegedly stated, "Some of the most fun sex I've had has actually been teaching inexperienced girls. I like sort of expanding things for them and helping them explore if it makes sense. . . . If I taught you (not saying I will yet!) I'd probably want to take it a little slow at first. Make sure you're comfortable." Arcand says Brown discussed his teaching method, saying, "I personally think it's best to build up the ladder--start by learning how to kiss well, then suck dick well, then fuck well. It builds confidence along the way and is a natural progression. But sometimes people just like to jump straight to sex haha." *Id.*

4

On April 14, 2023, after a discussion of oral sex, Brown allegedly asked Izzy whether she was available on Sunday, April 16, 2023, and requested that they engage in a voice call using the social media platform Telegram.  Brown then called Izzy.  A female law enforcement officer posed as Izzy for the call.  *Id.*, PageID # 7.  During the call, Brown allegedly stated that his vehicle was a good place to hang out and again asked whether Izzy had played with her G-spot.  He reportedly told Izzy that he wanted to meet on Sunday, April 16, 2023, and that he wanted them to kiss and possibly engage in oral sex or a hand job.  Brown allegedly told Izzy that he was a "dom" who enjoyed pulling hair and wanted Izzy naked bent over his knees so that he could spank her.  He allegedly discussed making her "cum" and said that he enjoyed "throat fucking."  In the written chat, he allegedly asked her whether she was curious about trying anal sex.  *Id.*, PageID #s 7-8.

Izzy's Telegram bio stated that she was 16, which Brown saw before the agent deleted it.  On April 14, 2023, Brown allegedly wrote, "Tell me you're 16 haha" and "It sure if I'm supposed to do anything with you if you're younger than that."  He then clarified that he meant to write, "Not sure," rather than "It sure."  Izzy told Brown that her Telegram bio stated that she was 16 "to make it seem older than I am."  Brown allegedly

5

responded, "Well this first time we're not having sex anyway. So let's meet on Sunday and go from there." *Id.*, PageID # 8.

The Army CID identified Brown through the pictures he sent to Izzy. Brown was 41 years old at the time, and his military legal experience included prosecuting child sex offenses. *Id.*, PageID # 9.

On April 16, 2023, Brown asked Izzy to engage in a video chat. The female decoy matched Brown's face on the chat to an official photograph. In a subsequent chat, Izzy asked Brown to bring a blanket, a beach mat, and a specific kind of gum. *Id.*, PageID # 10.

A surveillance team saw Brown leave his residence with a blanket and stop at the Shoppette on Schofield Barracks to purchase gum. Brown was arrested at the "meet" location. *Id.*

Special Agent Arcand stated that, based on his experience, if Brown had consummated sexual activity with a 14-year-old, Brown could have been prosecuted for committing Sexual Assault in the First Degree in violation of sections 707-700 and 707-730 of Hawaii Revised Statutes.

On April 21, 2023, the magistrate judge issued an Order Setting Conditions of Release. *See* ECF No. 10. On November 17, 2023, Brown sought reconsideration of that order. *See* ECF No. 22. Among other things, Brown argued that during his video calls he could clearly see that he was talking with an adult female

6

(not a 14-year-old girl) and that he told Izzy multiple times that he would not have sex.  *See id.*, PageID #s 74-75, 77-78.

The Government objected to the reconsideration motion, arguing that Brown was a danger to the community.  The Government pointed to material that had recently been recovered from Brown's phone.  According to the Government, the phone records showed that Brown was a sexual predator who targeted girls younger than 18.  *See* ECF No. 24, PageID #s 114, 119.  The Government summarized a number of sexually explicit communications between Brown and girls supposedly under 18, which included the sending of nude pictures and one alleged attempt to meet a 15-year-old girl at a Minute Suites within an airport terminal for sexual conduct.  *See id.*, PageID #s 120-28.

On November 29,2023, the magistrate judge denied Brown's motion for reconsideration.  *See* ECF No. 25.

On November 30, 2023, a Grand Jury indicted Brown, charging him with attempted sexual enticement of a minor in violation of 18 U.S.C. § 2422(b).  *See* ECF No. 275.  The Indictment was not sealed and remains available for public viewing.  It alleges that Brown, aka "forever sun," used the internet, a cellular phone, and a cellular communications network to knowingly persuade, induce, entice, and coerce a minor to engage in sexual activity prohibited by sections 707-730(1)(c) and 707-732(1)(c) of Hawaii Revised Statutes.  *Id.*  The

7

Indictment did not contain all of the detail in the affidavit supporting the Criminal Complaint.  *Id.*

On December 1, 2023, the U.S. Attorney's Office for the District of Hawaii released the following press release with the heading of "Military Lawyer Indicted for Attempted Sexual Enticement of a Minor":

HONOLULU – On November 30, 2023, a federal grand jury indicted Ross Andrew Brown, 42, of Kailua, for attempted sexual enticement of a minor. Brown is a lawyer serving as a Lieutenant Colonel in the United States Air Force Judge Advocate General's Corps and is stationed in Hawaii. Brown will be arraigned on the one-count Indictment on December 20, 2023.

Brown was originally charged by Criminal Complaint on April 17, 2023. The Complaint alleges that during April 12 to 16, 2023, Brown communicated via social media platforms Whisper and Telegram with an undercover law enforcement agent posing as a 14-year-old girl. During the communications, Brown allegedly discussed the sexual activity in which Brown and the fictious girl would engage. On April 17, Brown drove to Schofield Barracks allegedly to meet the fictitious girl and was arrested by federal law enforcement agents. After arrest, a United States Magistrate Judge denied the government's motion to detain Brown pending trial and released him on conditions.

If convicted, Brown faces a term of imprisonment between ten years and life, a fine of up to $250,000, and supervised release for a term of up to life. The charge in the Indictment is merely an accusation, and Brown is presumed innocent unless and until proven guilty beyond a reasonable doubt in a court of law. In the case of conviction, any sentence would be imposed by a United States District Judge based on the statutory sentencing factors and the advisory United States Sentencing Guidelines.

The charge is the result of a joint investigation conducted by the Air Force Office of Special Investigations and the Army Criminal Investigation Division. Assistant U.S. Attorney Craig S. Nolan is handling the prosecution.

**Contact**
Elliot Enoki
Elliot.Enoki@usdoj.gov

*Updated December 1, 2023*

ECF No. 36-2.

On December 5, 2023, the Honolulu Star Advertiser ran a story with the headline, "Air Force prosecutor accused of luring underage girl for sex."  The story summarized the affidavit in support of the Criminal Complaint.  *See* ECF No. 36-5, PageID #s 650-51.

**III.     ANALYSIS.**

The Sixth Amendment provides defendants with the right to a trial by an impartial jury. Courts therefore have a duty to insure the fairness of a criminal proceeding when faced with excessive publicity. *See Levine v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 764 F.2d 590, 596 (9th Cir. 1985). The Ninth Circuit notes that when the case is "a notorious one, that burden on the court is heavy." *Id.* at 601 (citation omitted). "[T]he circus-like environment that surrounds highly publicized trials threatens the integrity of the judicial system." *Id.* at 598.

Courts may restrict the communications of trial participants when necessary to ensure a fair trial for a criminal defendant. *See Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1073 (1991) (quotation marks and citations omitted). The speech of lawyers representing clients in pending cases may be regulated under a less demanding standard than regulating speech by the press. *Id.* at 1074. Thus, the Supreme Court has noted that "the 'substantial likelihood of material prejudice' standard constitutes a constitutionally permissible balance between the First Amendment rights of attorneys in pending cases and the State's interest in fair trials." *Id.* at 1075.

This district has noted that "'[o]nly the occasional case presents a danger of prejudice from pretrial publicity.'" *Doe v. Hawaii*, 2011 WL 4954606, at *2 (D. Haw. Oct. 14, 2011)

9

(quoting *Gentile*, 501 U.S. at 1064).  In a civil case, the Ninth Circuit noted that a prior restraint to ensure a fair trial is permissible "only if its absence would prevent securing twelve jurors who could, with proper judicial protection, render a verdict based only on the evidence admitted during trial."  *In re Dan Farr Prods.*, 874 F.3d 590, 593 (9th Cir. 2017).  *Dan Farr Productions* also noted, "The well-established doctrines on jury selection and the court's inherent management powers provide an alternative, less restrictive, means of ensuring a fair trial."  *Id.*  While *Doe v. Hawaii* was also a civil matter, it provides guidance here.

Balancing the right to a fair trial with First Amendment rights, the judge in the *Doe* case noted that matters of public record that a party communicates to the media do not support restraining speech unless they are so inflammatory that the court concludes otherwise.  2011 WL 4954606, at *4.  Additionally, the judge concluded that a restraining order was not justified because the case did not involve widespread publicity.  *Id.* at *5.  Thus, there was no "substantial likelihood of material prejudice."  *Id.*  The judge also noted that he had a variety of tools to ensure the jury pool would not be tainted, including asking each potential juror about what the juror had heard about the case and whether knowledge of the case would color the potential juror's opinion at trial.  *Id.* at *6.

In *Zal v. Steppe*, 968 F.2d 924, 928 (9th Cir. 1992), the Ninth Circuit relied on *Gentile* in upholding a contempt citation against an attorney, rejecting an argument that a "clear and present danger" standard should be applied. In *United States v. Brown*, 218 F.3d 415 (5th Cir. 2000), the Fifth Circuit relied on *Gentile* to uphold a "gag order" on trial participants based on the substantial likelihood that extrajudicial commentary would undermine a fair trial. A district court within the Ninth Circuit has since looked at whether there was a "substantial likelihood that extrajudicial commentary" would undermine a fair trial when examining a request for a "gag order." *See Bromgard v. Montana*, 2007 WL 9709964, at *2 (D. Mont. July 11, 2007).

Brown fails to show any likelihood that the Government's extrajudicial commentary will undermine a fair trial, let alone a substantial likelihood of such prejudice. The Government represents that its "long-standing general practice is to issue a press release at the initiation of a case and at the close of a case." ECF No. 42, PageID #s 1003-04. Nothing in the record indicates that the Government will continue to issue press releases or other extrajudicial commentary before the close of the case.

Moreover, the Government's press release about this case covered only matters already in the Criminal Complaint, which the public has access to. *Compare* ECF No. 36-2 *with* ECF

11

No. 1.  The press release also stated that the charge in the Indictment was only an accusation and that Brown was innocent until proven guilty beyond a reasonable doubt in a court of law.  *See* ECF No. 36-2.  There has been no showing that the press release raises any likelihood that Brown will suffer an unfair trial.

Notwithstanding the reference in Brown's present motion to extrajudicial statements, some of the statements Brown complains about were not extrajudicial.  In opposing Brown's reconsideration motion concerning the terms of his pretrial release, the Government submitted numerous summaries of conversations that Brown allegedly had with girls under 18.  This evidence was submitted in response to Brown's claim that he knew from the video with the Government agent that he was talking with an adult, rather than a 14-year-old girl.  The Government represented that it had recently obtained evidence from Brown's phone showing that Brown had used Whisper to talk with underage girls in sexually explicit ways and allegedly even tried to meet one who was 15 for a sexual encounter.  Thus, the Government argued, Brown was a danger to the community and his pretrial release conditions should not be relaxed.  The Government is certainly allowed to advocate in court proceedings in response to Brown's arguments.  The Government's statements made during judicial proceedings provide no basis for restricting extrajudicial statements.

Finally, there has been no showing of what percentage of the jury pool even reads any news outlet or other source through which prospective jurors might be exposed to pretrial publicity.  While this might be the kind of case that the press will cover in detail, the record does not establish that this a highly publicized case at this point.  Brown's reply uses many adjectives to accuse the Government of bad conduct, but Brown fails to sufficiently establish any likelihood that the Government has prejudiced or is likely to prejudice the jury pool.  There is no showing of a need for this court to restrict the Government.  While the facts of this case are salacious, that, by itself, does not indicate that the jury pool has been or will be tainted by the Government's press release.  Attached to Brown's motion is a single article from a local newspaper about this case, along with reader's comments about the news article.  Brown may object to statements in the article or the comments, but he does not identify any particular statement or comment that is inaccurate.  Nor does he explain why the Government should be restricted in response to any third-party impropriety Brown may allege.

In any event, this court can ensure that Brown receives a fair trial by asking potential jurors during voir dire whether they have had any exposure to pretrial publicity with respect to this case and then determining whether any potential juror who

13

has had such exposure can still be fair and impartial. The court routinely instructs jurors not to read reports about a case. On the present record, Brown's right to a fair trial is being adequately preserved.

**IV.     CONCLUSION.**

Because Brown does not sufficiently support his motion to ensure that extrajudicial statements do not prejudice the jury pool, that motion is denied.

It is so ordered.

DATED: Honolulu, Hawaii, January 16, 2024.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States v. Brown*, Cr. No. 23-00090 SOM; ORDER DENYING MOTION TO ENSURE EXTRAJUDICIAL STATEMENTS DO NOT PREJUDICE THESE PROCEEDINGS

14