KENNETH M. SORENSON
United States Attorney
District of Hawaii

JONATHAN D. SLACK
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Email: Jonathan.Slack@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ROSS ANDREW BROWN,<br><br>Defendant. | Case No. CR23-90 LEK<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br><u>SENTENCING</u><br>DATE: August 19, 2026<br>TIME: 1:30 p.m.<br>JUDGE: Hon. Leslie E. Kobayashi |

# <u>UNITED STATES' SENTENCING MEMORANDUM</u>

## I. INTRODUCTION

The United States of America respectfully submits this Memorandum regarding the sentencing of Defendant Ross Andrew Brown, set for August 19, 2026, before this Honorable Court. A jury convicted Brown of six criminal counts:

attempted sexual enticement of a minor (Counts 1 and 6), attempted sexual exploitation of a child (Counts 2 and 4), and attempted receipt of child pornography (Counts 3 and 5). The PSR calculates a total offense level of 40 and criminal history category I, resulting in a Guideline range of 292–365 months of imprisonment.

The government recommends a total sentence of imprisonment between 262 and 300 months, and will provide a more specific recommendation at the upcoming sentencing hearing. The government also recommends 20 years of supervised release and the financial assessments described below.[1] This recommended sentence is "sufficient, but not greater than necessary" under 18 U.S.C. § 3553(a).

## II. BACKGROUND

Brown repeatedly used Internet platforms to solicit sexual activity and imagery from persons he understood to be minors. *See* PSR ¶¶ 15–37. In April 2023, he arranged to meet with "Izzy," whom he understood to be a 14-year-old female. "Izzy" was, of course, an undercover officer posing as a minor. When Brown arrived at the meeting location he had arranged with "Izzy," he was arrested by investigators with the US Army Criminal Investigation Command. *Id.* ¶¶ 21–

[1] Because the jury did not decide forfeiture of the iPhone and Ford Ranger (PSR ¶ 127), the government is no longer seeking forfeiture of those items.

22. Forensic review of Brown's digital devices and cloud accounts revealed a pattern of sexualized communications with other persons representing themselves to be minors (including ages 12–17). Some of the communications suggested in-person meetings. *See id.* ¶¶ 23, 29–34. As to the victim "Schwaggle" (representing herself to be 15), Brown attempted to coordinate a meeting in an airport micro-suite. *Id.* ¶¶ 24–28. As to the victims "Biscuit" (representing herself to be 15) and "Chaos Bunny" (representing herself to be 17), Brown solicited sexual images from both of those victims. *Id.* ¶¶ 29–32.

Investigators identified and contacted at least one minor who engaged in sexualized communications with Brown. That minor, user "foxsnapzz," described how Brown initiated distressing conversations with her after she disclosed that she was only 16 years old. The conversations featured Brown discussing degrading sexual acts and sodomization. *Id.* ¶¶ 35–36. The minor indicated that she was depressed at the time she engaged in conversations with Brown. *See id.*

During his trial testimony, Brown flatly denied believing he was communicating with minors. ECF No. 315 at PageID.5509–10. The jury rejected that testimony. *See* ECF No. 300.

## III. ARGUMENT

The § 3553(a) factors require a substantial custodial sentence in this case. The government recommends a sentence of imprisonment between 262 and 300

months, and will provide a more specific recommendation at the upcoming sentencing hearing.

**A. The Nature and Circumstances of the Offense; Seriousness of the Offense; Deterrence; Protection of the Public.**

Brown's offense conduct was not a single lapse in judgment. It was a sustained, multi-victim pattern that spanned Internet platforms and jurisdictions. In some cases, that pattern culminated in (at least) attempted in-person meetings with individuals whom Brown understood to be minors. In other cases, the pattern culminated in solicitation of sexual images from minors. *See* PSR ¶¶ 21–22, 29–32. Brown's pattern of predatory behavior presents acute risks to minors in this community and, therefore, requires a serious penal deterrent. A custodial sentence near 300 months adequately reflects the gravity of Brown's attempted enticement of minors, exploitation of children, and receipt of child pornography.

**B. Brown's Betrayal of Trust and Leadership.**

Speaking of respect for the law—or lack thereof—Brown committed his offenses while he was a military attorney and former prosecutor. He knew exactly what the United States' criminal laws protected and why. *See* PSR ¶¶ 15 (noting prior experience prosecuting child-sex offenses), 103–105 (listing rank, duties, commendations in the military). When a legal officer charged with upholding the law violates the law, he harms much more than his immediate victims. He erodes

confidence in the justice system and undermines public faith in the rule of law. That breach of trust warrants substantial weight under § 3553(a)(1)–(2).

Brown's leadership position and legal experience also amplified the damage he was able to cause. His stature and expertise gave him unique insight into how to exploit others and, undoubtedly, how to avoid being caught. That aggravates Brown's offense conduct and heightens the need to punish him, to deter him, and to protect the public from him.

**C. Continued Minimization and Lack of Insight.**

Brown apparently continues to deny believing he was communicating with minors. He resists sex-offense-specific treatment. PSR ¶ 99. And he attributes his criminal behavior to "compulsive chatter." *Id.* ¶ 96a. Those pre-sentencing positions are contrary to the verdict and the record. More importantly, they signal heightened risk for recidivism and necessitate a sentence near the Guideline range.

**D. History and Characteristics; Mitigation.**

The government recognizes Brown's military service, commendations, family support, and compliance on release. His medical diagnosis is also relevant to his sentencing. *See* PSR ¶¶ 94. But those factors do not outweigh the seriousness of his crimes, particularly how his pattern of predatory behavior presents a huge risk to community safety, particularly the most vulnerable. A custodial sentence near 300 months accounts for mitigation while also meeting the purpose of sentencing.

# IV. SENTENCING ISSUES

## A. The Obstruction of Justice Enhancement Applies (U.S.S.G. § 3C1.1).

The PSR correctly applies § 3C1.1. Perjury-based obstruction requires independent findings that the defendant (1) gave false testimony (2) on a material matter (3) with willful intent. *See United States v. Castro-Ponce*, 770 F.3d 819, 822 (9th Cir. 2014); *accord United States v. Jimenez-Ortega*, 472 F.3d 1102, 1103 (9th Cir. 2007). Brown testified that he "never believed" he was chatting with minors. ECF No. 315 at PageID.5509–10. And he specifically denied believing "Biscuit" was a minor. *Id.* at PageID.5546, ll. 19–21.

Those statements were material and false. Brown's belief that he was communicating with another person under the age of 18, while attempting to entice that person, was an element of Counts 2 and 4. ECF No. 290 at PageID.5049. Brown's knowledge that a minor was depicted in sexual imagery he attempted to receive, was an element of Counts 3 and 5. *Id.* at PageID.5052. The jury thus found the opposite of Brown's testimony beyond a reasonable doubt. *See* ECF No. 300. That establishes materiality and falsity.

If there were any doubt as to falsity, other evidence in this case proves that Brown testified falsely. On cross-examination, when confronted with government's exhibit 29, Brown acknowledged that "Biscuit" had messaged him expressly stating that she was 15 and explaining how she had set her profile age to

be higher than 15 in order to bypass platform prohibitions against minors' direct messaging. ECF No. 315 at PageID.5554–55. Brown further admitted that, as of February 2021, he knew minors on the Whisper platform would select an adult age to enable direct messaging. *See id.* at PageID.5555–56. Those acknowledgments cannot reasonably be reconciled with Brown's earlier, categorical denial of ever having believed that he had chatted with a minor. To the extent any gap existed between the two (i.e., personal belief versus factual truth), the jury's verdict closed any such gap by finding that Brown believed that the targets of his enticements and sexual-image solicitations were minors. *See United States v. Villarman-Oviedo*, 325 F.3d 1, 16 (1st Cir. 2003) ("In reaching the opposite conclusion as to his guilt beyond a reasonable doubt regarding a heroin conspiracy, the jury must perforce have determined that Villarman's testimony was false—not the product of mistake, confusion or faulty memory, but rather stemming from Villarman's desire to convince the jury of a fabricated theory to excuse himself from liability. In turn, the district court could not have been clearly erroneous in deciding that Villarman had provided materially false information, thus justifying the two-level increase for obstruction of justice.").

The record also shows willfulness under § 3C1.1. Brown's denials were deliberate, repeated, and unequivocal. In other words, they were not isolated aberrations or the product of misunderstandings. He maintained—across both

direct and cross—that he never believed he was chatting with minors. *See* ECF No. 315 at PageID.5509–10, PageID.5557–58. The willfulness requirement is satisfied when testimony is "so incredible, in light of all of the evidence, that it [is] clear to the court" the defendant intended to obstruct rather than having suffered confusion or faulty memory. *Castro-Ponce*, 770 F.3d at 822. Brown's sustained insistence that he had not communicated with minors—contradicted by specific messages in which the persons told him they were minors, and by his own admission that minors would set adult ages to enable direct messaging on the platform—meets the "clear to the court" standard defined in *Castro-Ponce*.

**B. The AVAA Assessment Applies (18 U.S.C. § 2259A).**

Section 2259A of Title 18 of the United States Code authorizes a monetary assessment (an "AVAA assessment") of "not more than $50,000" for production offenses and "not more than $35,000" for child pornography trafficking. Counts 2 and 4 are production offenses. *See* 18 U.S.C. § 2259(c)(1) (defining "child pornography production" to cover "conduct proscribed by subsections (a) through (c) of section 2251," which is charged in Counts 2 and 4). Counts 3 and 5 are trafficking offenses. *See* 18 U.S.C. § 2259(c)(3) (defining "trafficking in child pornography" to cover "conduct proscribed by section . . . 2252A(a)(1) through (5)," which is charged in Counts 3 and 5).

In determining the amount of the AVAA assessment, the Court should consider the § 3553(a) and § 3572 factors, including Brown's ability to pay. *See* 18 U.S.C. § 2259A(c). Brown has a net worth exceeding $2 million, substantial liquid assets, and robust historical income. *See* PSR ¶¶ 106, 119–126. The Court should impose AVAA assessments totaling $85,000, as recommended by the Probation Office, specifically, $50,000 on Counts 2 and 4, and $35,000 on Counts 3 and 5.

**C. The JVTA Assessment Applies Per Count (18 U.S.C. § 3014).**

Section 3014 of Title 18 of the United States Code mandates a $5,000 per count assessment ("JVTA assessment") on non-indigent defendants who are convicted under Chapter 110 or Chapter 117 of Title 18. Chapters 110 and 117 encompass all six counts of conviction in this case. Brown is non-indigent. *See* PSR ¶¶ 119–125. And the Ninth Circuit holds that the JVTA assessment applies per count. *See United States v. Randall*, 34 F.4th 867, 877 (9th Cir. 2022). This Court should thus impose $30,000, i.e., $5,000 × 6 counts.

**D. Supervised Release.**

The supervised release statute and the Guidelines authorize a term of 5 years to life. *See* 18 U.S.C. § 3583(k); U.S.S.G. § 5D1.2(a). Given the severity of Brown's offenses, his continued minimization of his criminal conduct, and his treatment needs, the government recommends 20 years of supervised release, with the conditions recommended by the Probation Office, *see* PSR ¶¶ 130–46, pp. 42–

45. Those conditions are well-supported by the record before this Court. They include sex-offense-specific assessment and treatment (with polygraph monitoring), mental-health treatment, sex-offender registration and reporting, restrictions on contact with minors and visiting places primarily used by minors, as well as digital device regulations. *See* PSR ¶¶ 130–46.

## V. CONCLUSION

For the above reasons, the United States respectfully requests that this Court:

1. Impose a total term of imprisonment between 262 and 300 months (e.g., 270 months on Counts 1, 2, 4, and 6; 240 months on Counts 3 and 5; all terms concurrent);

2. Impose 20 years of supervised release with the conditions recommended in the PSR;

3. Impose $30,000 in JVTA assessments and $85,000 in AVAA assessments, plus the mandatory $600 special assessment; and

4. Make the required factual findings supporting the obstruction enhancement under U.S.S.G. § 3C1.1.

DATED: August 14, 2026, at Honolulu, Hawaii.

Respectfully submitted,

KENNETH M. SORENSON
United States Attorney
District of Hawaii

By: */s/ Jonathan D. Slack*
JONATHAN D. SLACK
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known address:

Served electronically through CM/ECF:

Birney B. Bervar bbb@bervar-jones.com
Attorney for Defendant
ROSS ANDREW BROWN

Cheyenne McKee cheyenne_mckee@hip.uscourts.gov
United States Probation Officer

DATED: August 14, 2026, at Honolulu, Hawaii.

*/s/ Jonathan D. Slack*
JONATHAN D. SLACK
Assistant U.S. Attorney